FUQUA *v.* MERCHANTS LOAN & SAVINGS ASSOCIATION, ET AL.

[No. 17,216.   Filed April 21, 1944.]

608

*Beasley, O'Brien, Lewis & Beasley,* of Terre Haute, for appellant.

*John P. Jeffries and William R. Johnson,* both of Terre Haute, and *Roy V. Tozer,* of Brazil, for appellee.

DOWELL, J.—On August 4, 1922, appellant and her husband borrowed of appellee, Merchants Loan and Savings Association, of Terre Haute, Indiana, the sum of $4,800 upon their written obligation of the following tenor:

"I promise to repay to MERCHANTS LOAN AND SAVINGS ASSOCIATION, of Terre Haute, Vigo County, Indiana, the sum of Forty Eight Hundred Dollars, borrowed on forty eight shares of stock in said Association which sum, with interest at the rate of seven per cent per annum from date until paid, payable semi-annually, I agree to pay said Association, in installments of not less than $ forty eight dollars per month, payable on or before the second Saturday of each month, together with Attorney's fees, all without relief from valuation and appraisement laws; and said payments shall continue until the payments of principal and the dividends declared by said Association on said 48 shares of stock shall equal the amount of this obligation, together with any sum

or sums of money which may hereafter be withdrawn after having been paid to and credited by said Association as dues upon said shares of stock.

"Carl C. Fuqua       Stella Fuqua"

and as security mortgaged to appellee certain real estate in Terre Haute, which at that time was owned by appellant and her husband as tenants by the entirety.

Appellant's husband, Carl C. Fuqua, was at the time the owner and operator of a grocery store under the name and style of Sunshine Grocery and previously had operated a small chain of restaurants.

On March 22, 1925, appellant and her husband, for the purpose of paying delinquent merchandise accounts of the husband obtained the sum of $500 from appellee loan and savings association and appellee's check in this amount was issued to Carl C. and Stella Fuqua and the sum of $500 so obtained was charged against credits due the Fuquas by reason of moneys previously paid in by them. No additional security was taken by appellee in the form of a new note or mortgage or otherwise. The appellee's check in this amount bears the endorsement of both appellant and her husband.

On March 7, 1927, appellant's husband obtained from appellee association the sum of $600 and appellee's check in this amount was issued to Carl C. Fuqua. In this instance, likewise, no additional security was taken by appellee. This second check bears the sole endorsement of Carl C. Fuqua. Appellant contends this second sum of money was obtained without her knowledge or consent.

Appellees Harry and Nellie V. Kerns took title to the mortgaged real estate April 28, 1934, by virtue of deed executed by the Fuquas for the purpose of expediting a property settlement between the Fuquas whose action for divorce was then pending.

Appellant and her husband were divorced on April 30, 1934, and appellees Kerns continued to hold said real estate in trust for appellant until July 15, 1942, when they coveyed it to her.

On July 31, 1942, appellee association filed its action in foreclosure. Appellant, by her pleadings, asserts that the mortgage indebtedness has been paid in full on the ground that appellee association arbitrarily charged against the mortgage debt the said sums of $500 and $600, without right, and that said charges with interest, amount to more than the amount claimed to be due on the mortgage. Appellees Kerns filed a disclaimer.

The cause was tried to the court resulting in judgment for appellee association in the sum of $3,687.94 and for foreclosure.

Error assigned is the overruling of the motion for new trial which challenges the legality of the decision, the sufficiency of the evidence and asserts error in the assessment of the recovery in that the amount thereof is too large.

Appellee Carl C. Fuqua makes no assignments and files no briefs.

The propositions thus presented here for consideration raise only the question as to whether or not appellant is chargeable with either or both of the amounts (plus interest) obtained from appellee association, as herein previously set out.

This question, applied to the instance of the first sum of money, i. e., that of $500, is easily resolved, even in the face of appellant's argument that there is no legal authority by which the amount secured by an existing mortgage can be increased by mere advancement of additional moneys. In this instance no additional money was advanced, nor was the

amount secured by the original mortgage increased. Appellant and her husband, over a period of years, had paid in to appellee association a certain amount of money which stood to their credit upon the books of the association. The parties merely withdrew $500 of this money thus reducing such credit by this amount. By the terms of their written obligation they agreed to repay with interest "any sum or sums of money which may hereafter be withdrawn after having been paid to and credited by said Association as dues upon said shares of stock." Such a transaction, though now precluded by the operation of the present law governing building and loan associations, was a common practice under the statutes prevailing at the time and was in no wise prohibited. See Acts 1911, ch. 151.

The second transaction involving $600, presents a more complicated problem. In this instance the husband alone obtained the money. Appellee's check was issued to him as sole payee and bears his endorsement solely. The only evidence before us as to the disposition of this money is the testimony of Carl Fuqua who stated that no part of it was deposited in bank; that all of it, however, was used in paying merchandise accounts of the grocery store, which, as appellee association admits by its brief, was operated by him as an individual and not in partnership with his wife. His bank account, wherein he deposited money taken in from the grocery store was carried in his individual name from about year prior to the date the sum of $600 was obtained until the time of the divorce.

To this point the evidence constrains us to the view that the debt created by the withdrawal of this sum was the individual debt of the husband, or, more exactly, that that portion of the total mortgage debt

created by the reduction, in that amount, of credits against it, caused by such withdrawal, was his debt individually.

It is obvious that such a reduction of credits effected a corresponding reduction of the interest, or equity, of the mortgagors in the mortgaged real estate. In a tenancy by the entirety the wife (as well as the husband) is seized of the entire estate *per tout* and not *per my*. *Dodge* v. *Kinzy et ux.* (1884), 101 Ind. 102; *Baker* v. *Cailor* (1934), 206 Ind. 440, 186 N. E. 769. It follows logically therefore that in the instant case there was a reduction of the wife's interest in the real property held by entirety and that such reduction was accomplished by the act of the husband individually.

It has been the uniform line of decisions in this State that a wife's interest and rights in property held by the entirety cannot be taken from her without her consent because of some profit or benefit flowing to her·husband. *Dodge* v. *Kinzy, supra;* *French* v. *National Refining Co.* (1940), 217 Ind. 121, 26 N. E. (2d) 47.

Evidence most favorable to the appellee discloses that the appellant worked in the grocery store with her husband; that she had access to the cash register and to the bills against the store. Appellee Fuqua so stated in his testimony and further stated: "the money in the store was free to her hand the same as mine, was just as much hers as mine; she had no income other than what came out of the store." In another portion of his testimony he stated that before he withdrew the $600 he told her that he would have to get some more money to straighten up some of the back bills against the store and that afterward, while checking certain accounts she was told "we are getting our heads above

water by getting this stuff straightened away." This witness testified also that his wife knew he obtained the $600 and knew what it was to be used for; that she knew the mortgage was on the property when accepting it in settlement of alimony and that she was to assume the unpaid portion thereof; that the loan book from appellee association was kept in a place easily accessible to his wife.

Upon the state of facts so disclosed appellee association contends, first, an estoppel, (a) by acceptance of benefits after full knowledge of the transaction, (b) by acquiescence, (c) by laches; second, agency, in that Carl C. Fuqua in the withdrawal of the $600 acted, not only for himself but also as agent for his wife.

We cannot believe that the mere silence of appellant, when informed by her husband that he would have to get some more money, and her failure to protest or object to such a vague and indefinite statement could in any wise be construed as an acquiescence or held sufficient of itself to raise an estoppel. *French* v. *National Refining Co., supra.* Nor are we able to perceive what benefits flowed to the wife out of the $600 transaction by the acceptance of which she has precluded herself. The Sunshine Grocery was owned and operated by Carl C. Fuqua as an individual. The assets thereof were declared for tax assessment in his individual name. All merchandise bought for sale therein was billed to him as an individual. There is absolutely no showing that the wife shared in the profits and appellee association by its brief waives the issue of partnership. Though the witness Fuqua insisted that the money in the store was free to her hand and that she had free access to the cash register there was no evidence whatsoever that any proportion of the $600 ever came into her hands for her own personal use or

benefit nor that she, at any time, ever took any amount or amounts of the store's money for her own use except a general showing that her clothing and necessary household expenses were paid for out of store funds. As a married man Fuqua was under a legal obligation to support his wife. It appears that she worked in the store without compensation other than her living and necessities which Fuqua was bound under the law to furnish her in any event. We cannot perceive that the payment of the husband's merchandise accounts conferred any benefits on his wife in addition to those which were rightfully hers by virtue of the marital relationship. Under the circumstances certainly there can be no contention that appellant could have been sued upon the merchandise accounts nor that levy could have been made upon the property held by the entirety in the event of judgment thereon against Fuqua. Thus the payment of these accounts in no manner tended to conserve the wife's interest in the realty nor to prevent the dissipation thereof in part or in whole.

One of the essential elements of an estoppel of the character here urged by appellee is a lack of knowledge on the part of him attempting to raise it. Such a party must show himself destitute of knowledge or of convenient and available means of acquiring such knowledge. Appellee has made no such showing. Even the record of prior transactions speaks against it on that point. It must, or should have been, apparent from the beginning that the withdrawal of this money was not consonant with sound business and financial practice and that its loss would be the result of appellee's own negligence. It permitted, without inquiry, the withdrawal of this sum of money by the husband alone under such circumstances as should have put an ordinarily prudent person upon inquiry,

appellee being at the time in full knowledge of all the facts and circumstances prevailing. Nor does it aid appellee's cause to concede, which we do not, that appellant, likewise, had full knowledge, for if both parties have the same means of ascertaining the truth there can be no estoppel. *Geisendorff* v. *Cobbs* (1911), 47 Ind. App. 573, 94 N. E. 236; *Anderson et al.* v. *Hubble* (1883), 93 Ind. 570; *The Markland Mining and Manufacturing Co.* v. *Kimmel et al.* (1882), 87 Ind. 560; *Wilkerson* v. *Wood* (1924), 81 Ind. App. 248, 143 N. E. 166; *Scranton* v. *Stewart et al.* (1875), 52 Ind. 68; *Long* v. *Anderson* (1878), 62 Ind. 537; *Bryan* v. *Uland et al.* (1884), 101 Ind. 477; *International Harvester Co.* v. *Holley, Sheriff* (1939), 106 Ind. App. 329, 18 N. E. (2d) 484; *Smith* v. *Yost* (1920), 72 Ind. App. 628, 125 N. E. 73; see also 21 C. J. 1129, 1131, § 131, § 132.

So in the case of *Coats* v. *Gordon et al.* (1896), 144 Ind. 19, 41 N. E. 1044, 42 N. E. 1025, decided under a law then prevailing which prohibited a married woman from becoming surety, it was held that she was not estopped from asserting the invalidity of a mortgage upon property held by the entirety where she knew same was invalid and failed to inform the mortgagee of her interest in the realty, the principle therein enunciated being that the mortgagee, in contemplation of law, also knew of its invalidity. In that case the court said:

> "It is true that a married woman may be bound by an estoppel *in pais,* but since the duty rests upon the person dealing with her to inquire of her, or from some source which will bind her, as to her relations to the contract . . . such person is in no position to claim an estoppel when he has neglected to so inquire . . . ."

We are of the opinion that this principle should prevail in the instant case. See also *Wright* v. *Fox* (1914), 56 Ind. App. 315, 103 N. E. 442.

With the element of partnership waived appellee's proposition presenting the theory of agency is borne out neither by the pleadings nor by the evidence. ■ The cause proceeded in the trial below on the theory of estoppel. That theory must prevail here. *Reserve, etc., Ins. Co.* v. *Dulin, Rec.* (1919), 69 Ind. App. 363, 122 N. E. 3; *Lewis* v. *Stanley et al.* (1897), 148 Ind. 351, 45 N. E. 693, 47 N. E. 677; *Crabb* v. *Orth* (1892), 133 Ind. 11, 32 N. E. 711.

Judgment reversed as to said amount of $600 plus interest and attorney fees and insofar as it includes same; and affirmed as to the remainder.

NOTE.—Reported in 54 N. E. (2d) 287.