MERITA L. GREENE *v*. ARNOLD G. MAURICIO.

[No. 371A46. Filed March 7, 1972. Rehearing denied April 6, 1972. Transfer denied September 15, 1972.]

*Roy S. Dale,* of Fort Wayne, for appellant.

*William E. Borror, Hunt, Suedhoff, Borror & Eilbacher,* of Fort Wayne, for appellee.

LOWDERMILK, J.—This cause was tried before the Honorable Dale J. Myers, Judge of the Allen Superior Court, and the record shows the appeal taken from the Honorable Alfred W. Moellering, who is presently Judge of the Superior Court of Allen County.

Plaintiff-appellant filed her complaint for damages to her person in which she alleged her injuries were proximately caused by the negligence of the defendant while each of the parties were driving motor vehicles in the City of Fort Wayne, which vehicles collided on Pontiac Street, a through street, at an alleyway intersecting the same within the 700 East block of Pontiac Street. The collision is alleged to have occurred on January 21, 1969, and the defendant-appellee was driving a 1966 Chevrolet automobile east on Pontiac Street, approaching the intersecting alleyway at a time when the plaintiff-appellant proceeded to enter Pontiac Street and was attempting to make a left turn and at which time the defendant-appellee allegedly struck her car with great force and violence on the left rear fender.

The material allegations of negligence on the part of the defendant are that:

(a) Defendant carelessly and negligently drove at an unlawful rate of speed under the conditions then and there existing, to-wit: 40 miles per hour.

(b) Defendant carelessly and negligently failed to keep and maintain a lookout for other persons and automobiles lawfully entering Pontiac Street, including plaintiff and her automobile.

(c) Defendant carelessly and negligently failed to keep his vehicle under control so as to avoid a collision with plaintiff and her vehicle.

That plaintiff sustained injuries to her person and was damaged in the amount of $25,000.

Defendant filed his answer in two Paragraphs, the first of which was admission and denial, and the second Paragraph of answer alleged that the collision was caused solely and proximately by the negligence of the plaintiff in her entering a through street from an alley directly in the path of defendant's vehicle which was lawfully proceeding on said through street; plaintiff failed to maintain a reasonable lookout for vehicles on the preferential highway she was entering, includ-

ing the vehicle of the defendant; plaintiff failed to yield the right-of-way to the vehicle of the defendant; the plaintiff failed to keep her vehicle under control so as to avoid a collision with defendant and his vehicle; the plaintiff failed to apply her brakes in time to avoid striking defendant's automobile; and said plaintiff's negligence was a proximate contributing cause of the collision in question and a bar to her right of recovery.

Plaintiff timely filed her reply to the second affirmative Paragraph of answer.

Trial was to the court without a jury and after which the final arguments were had and on March 20, 1970, defendant filed his proposed special findings of fact and conclusions of law thereon.

Final argument was reset for April 10, 1970, at which time plaintiff filed her proposed special findings of fact and conclusions of law; final argument of the cause was had and ruling was taken under advisement by the court.

Thereafter, on July 16, 1970, the court entered findings of fact, which findings of fact and conclusions of law thereon, together with the judgment entered thereon by the Honorable Dale J. Myers, then Judge of the Allen Superior Court, are in the words and figures as follows:

"1. On January 21, 1969, Plaintiff was the operator of a certain 1966 Ford automobile which she was operating in a northerly direction in the alley between Hanna and Weisser Park Avenues at its intersection with Pontiac Street in the City of Fort Wayne, Allen County, Indiana.

"2. On said date, Defendant was operating a certain 1966 Chevrolet automobile east on said Pontiac Street approaching said alleyway.

"3. Immediately west of said alley automobiles driven by Mr. George McCowan and Mr. Lee Smith were stopped in the lane of traffic for eastbound travel on Pontiac Street.

"4. As Defendant approached the stopped vehicles, he proceeded to pull to his left to pass them and while in the process of passing said vehicles, Plaintiff did drive her

vehicle out of the alley and into said Pontiac Street immediately in front of Defendant's vehicle.

"5. Defendant immediately upon seeing Plaintiff emerged from said alley sounded his horn and applied his brakes leaving fifty-eight (58) feet of skid marks on said street.

"6. Plaintiff did not see Defendant's vehicle until Defendant sounded his horn and applied his brakes at which time Plaintiff was in approximately the middle of said Pontiac Street.

"7. Although Defendant applied his brakes he was unable to bring his vehicle to a stop before a collision occurred with Plaintiff's vehicle which was still moving in a northerly direction into said street at the time of impact.

"8. Pontiac Street is a duly constituted public thoroughfare in the City of Fort Wayne, Allen County, Indiana and traffic thereon has the right-of-way over traffic entering said thoroughfare from any alley or private drive.

"9. At the time of the collision in question, there was in full force and effect in the city of Fort Wayne the following ordinances: Chapter 31, Sections 12, 14, 59 and 78 of which this Court takes judicial notice.

"10. Plaintiff entered said Pontiac Street in violation of City Ordinance, Chapter 31, Section 59 aforesaid.

"11. Plaintiff was not directed to enter said thoroughfare by any police officer or other person with authority that would excuse her failure to obey said ordinance.

"12. An alley and a street crossing do not make an intersection under the ordinances of the City of Fort Wayne.

"13. The collision in question was proximately caused by the negligence of the Plaintiff, Merita L. Greene, in failing to keep a proper lookout for other vehicles on the preferential street and for failure to yield the right-of-way to other vehicles.

## CONCLUSIONS OF LAW

"1. The law is with the Defendant and against the Plaintiff on her Complaint.

"2. Plaintiff did violate Chapter 31, Section 59 of the ordinances of the City of Fort Wayne with her violation thereof being a proximate cause of the collision in question.

"3. Plaintiff did fail to keep a proper lookout for vehicles using the through street as required by law and Plaintiff's

failure in this regard also was a proximate cause of the collision in question.

"4. Plaintiff failed to yield the right-of-way to Defendant's vehicle lawfully proceeding upon the through street as required by law which failure was also a proximate cause of the collision in question.

"5. Defendant was not negligent in any way that proximately contributed to the collision in question.

## JUDGMENT

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT Plaintiff take nothing by way of her Complaint and that all costs of this action be assessed against the Plaintiff."

The court's special findings of fact and conclusions of law and judgment entered thereon shows on its face that he adopted as his own and made the defendant's tendered special findings of fact and conclusions of law and judgment thereon that of the court.

Plaintiff-appellant timely filed her motion to correct errors and attached thereto her memorandum, which sets out a great portion of the evidence. The claimed errors are as follows, to-wit:

1. The decision and judgment of the trial court was not supported by sufficient evidence upon all necessary elements of a claim or defense and was contrary to the evidence. A part of the reasons are paraphrased here as follows:

(A) The evidence revealed that the plaintiff stopped and looked in both directions prior to entering Pontiac Street and neither she nor the two drivers stopped on Pontiac Street observed the defendant prior to plaintiff entering Pontiac Street, indicating that plaintiff was a reasonably prudent person and exercised ordinary and reasonable care under the circumstances then and there existing.

(B) The defendant's violation of the Fort Wayne City Ordinance and statutory law of Indiana which were prima

facie evidence of negligence, actual negligence and the proximate cause of the accident in that he was driving approximately 40 miles per hour in a 30 miles per hour speed zone and at the time he was passing left of center two vehicles which were stopped in the driving lane of Pontiac Street.

(C) This is very much a reiteration of specification (B) above with the further allegation that defendant-appellee as a reasonable person should have foreseen the consequences of his negligent acts, which were the proximate cause of the accident.

(D) Failure of the defendant to keep a proper lookout under the facts and circumstances then existing.

(E) Plaintiff did not violate Fort Wayne City Ordinance, Chapter 31, Section 59, in that she stopped her vehicle prior to entering Pontiac Street from the alley and yielded to all traffic that she saw or could have seen as a reasonably prudent person, exercising ordinary and reasonable care.

(F) Under the evidence had plaintiff-appellant violated said City Ordinance, Chapter and Section above set out, such violation was not the proximate cause of the accident and she was not liable.

(G) Defendant failed to have his car under proper control in that he was driving too fast to stop his vehicle in time to avoid colliding with plaintiff after observing her and considering the circumstances then and there existing.

2. The decision and judgment were contrary to law in the following particulars:

(A) This is a reiteration of 1 (E) above.

(B) This is a reiteration of 1 (F) above.

(C) Defendant's excessive speed and his passing left of center to pass vehicles in the travel lane was negligence and a proximate cause of the accident.

(D) Failure to keep a proper lookout.

(E) Plaintiff had no duty to anticipate the defendant's negligently passing on the left the two vehicles parked in the center of Pontiac Street.

(F) Defendant violated motor vehicles statutes of Indiana, namely, Burns § 47-2010 and Fort Wayne City Ordinance, Chapter 31, Section 45, which was negligence and the proximate cause of the collision.

(G) Plaintiff was not guilty of any negligence which proximately caused the collision.

3. Plaintiff was denied a fair trial by an irregularity in the proceedings of the court and the decree in that the order, judgment and decree were made by the court on the recommendation of the special clerk to the court, who was unaware of the evidence that was presented at the trial.

The facts in this case are that on January 21, 1969, there was in the City of Fort Wayne, Indiana, a street commonly known as Pontiac Street, which was 33 feet wide, which ran generally in an easterly and westerly direction and was hard surfaced, as disclosed by the exhibits and was either blacktop or concrete pavement construction.

The same was intersected about the 700 block by an alley between Hanna and Weisser Park Avenue. The alley ran in a northerly and southerly direction and as evidenced from the photographic exhibits apparently intersected Pontiac Street at right angles. Pontiac Street had a line down its center separating traffic traveling in the two directions. On January 21, 1969, it was permissible to park on Pontiac Street, but subsequent to that date by city ordinance parking has been prohibited.

Plaintiff-appellant was driving her husband's automobile in a northerly direction on the alley and pulled up to Pontiac Street where she made a full and complete stop. Her evidence is undisputed that after she first stopped she looked to her right and to her left and that on looking to her left a car headed east on Pontiac Street was stopped 15 or 20 feet from

the alley and next to the center line of Pontiac Street. This car was operated by George Edward McGowan. Prior to his pulling out and stopping as aforesaid he had been parked at the curb and before pulling from the curb he looked in his rear and saw another car that had also been parked behind him at the curb and which apparently left the curb at the same time he did and pulled out to the center line of Pontiac Street and stopped to the rear of McCowan's car.

McCowan testified that he desired to make a right turn into the alley in which plaintiff-appellant was stopped preparatory to pulling onto Pontiac Street. He further testified that after he had stopped to permit the plaintiff to leave the alley he again looked behind him toward the light signal at Hanna and Pontiac Streets; that there was no traffic coming either way and he motioned for the plaintiff to come out of the alley. This was a hand motion and was made at a time that plaintiff-appellant was stopped at a standstill in said alley. Plaintiff-appellant pulled from the alley and proceeded to come in front of McCowan's car. McCowan then heard a car, which he hadn't previously seen, skid beside his car and observed that plaintiff-appellant was in Pontiac Street and started accelerating her automobile. At this time plaintiff-appellant was half way in the street in front of his car when he heard the skid; she was out in the intersection when he heard the skidding and she accelerated to get out of the path of defendant-appellee's car. The evidence is further that plaintiff went across Pontiac Street and did not accelerate until she heard the skidding. McCowan further testified that plaintiff-appellant's having accelerated her car moved it forward enough that she was hit on the tail end of her car and her car was spun around. This witness did not know the speed of defendant-appellee, but did hear his car skidding before he saw the car and did not see the car until it had passed him.

McCowan did not observe anything coming from behind him when he motioned plaintiff to leave the alley other than the car which was stopped directly behind him some 5 to 7 feet

and next to the center line. There was no car approaching from the west.

A witness, Lee Smith, testified that on the day and hour in question his car was parked within the 700 East block of Pontiac Street and that he got in his car at the same time witness McCowan got in his car, but McCowan started up before he did; he pulled up behind McCowan's car and both stopped and he was "pretty close" to McCowan. Witness Smith observed and testified that as the plaintiff-appellant was coming out of the alley McCowan stopped and motioned for her to come out. Plaintiff-appellant was about to come out when the defendant-appellee skidded by him. He did hear a horn blow and skidding and it was all over, but he did not have a chance to see the defendant-appellee prior to hearing the horn and skidding. When witness Smith pulled away from the curb he looked in his rear vision mirror and did not observe anything.

Witness Smith only saw the tail-end of defendant's vehicle when defendant went by "just quick" and he heard a horn blow and brakes. He testified defendant-appellee could not stop and plaintiff-appellant made an effort to get out of his way and that she, while in the middle of the street, stepped on the gas to avoid the defendant.

He further testified he never saw the defendant in the lane behind him; and he further testified Mr. McCowan and he had pulled out from the curb to the center line and stopped.

The record discloses that there is an automatic traffic signal at the intersection of Pontiac and Hanna Streets.

Marshall Dean Heingartner, a Fort Wayne policeman, testified that he worked the wreck in question and examined the accident. He further testified that plaintiff-appellant told him she turned out of the alley and was going to make a left turn on Pontiac Street; that she had looked both ways and the way was clear; that before she could make her turn she heard the skid of tires coming toward her, and in an attempt

to get out of the way of the other vehicle she accelerated and was struck. Officer Heingartner observed skid marks and found them to be 58 feet, which were from the defendant's car and were within the west-bound lane.

He further testified the distance from Hanna Street to the alleyway was 106 feet.

Officer James A. Greider of the Fort Wayne Police Department assisted in the investigation of the wreck in question and talked with the defendant-appellee, who told him he was going east on Pontiac and saw cars stopped and started to go around them when he saw a car appear in front of him and he applied his brakes. The stopped cars were in the traffic lane. He further testified that the defendant's car left 58 feet of skid marks.

The record establishes from the evidence of Sylvester R. Greene that the speed limit on 700 East block of Pontiac Street was 30 miles per hour on January 21, 1969.

Defendant-appellee testified that he had a green light on Hanna Street and turned left from Hanna onto Pontiac Street and that there were two cars parking on the lanes and he went around the two cars and hit the lady coming out of an alley while he was driving east on Pontiac Street at a speed of 25 miles per hour. He observed the two vehicles stopped in the driving lane for eastbound traffic and he went around them; no traffic was coming toward him so he proceeded to pull around the two cars stopped in the street. The cars blocked the view of the alley. When he pulled around the two cars he went to the left of the center of Pontiac Street at which time he saw the plaintiff come out of the alley in front of his car. Defendant-appellee further stated that when he observed the plaintiff she was already out there in the middle and in defendant's lane.

The defendant-appellee further testified on cross examination that *when he saw the two cars stopped in the middle of the street he decided to go around them because nothing was*

*coming from the opposite direction. He never thought for one second why the cars were stopped in the middle of the street in front of the alley.*

The record shows that on cross examination certain questions were asked the defendant-appellee and were answered as follows, to-wit:

"Q. But, in fact, they were stopped. They were not parking, were they, Mr. Mauricio?

A. No, they were stopped there.

Q. And, there was nothing there to indicate that they were parked, was there, Mr. Mauricio?

A. No.

Q. Now, when you saw these two cars stopped in the middle of the street you decided to go by them?

A. I decided to go around them, because there was nothing else coming on the other side.

Q. Did you ever reflect a second why these cars were stopped out in the middle of the street?

A. No.

Q. You never thought about it?

A. Thought about what?

Q. Why they were stopped in the middle of the street behind the alleyway?

A. Why?

Q. Yes.

A. No.

Q. It never occurred to you at all?

A. No.

Q. These cars weren't moving, were they?

A. No."

At the time defendant-appellee made the turn onto Pontiac Street he saw the two cars stopped. He went into the eastbound lane for a short distance and then went around the cars stating there was nothing else to obstruct his view on Pontiac Street other than the two cars. He had a pretty clear shot

on Pontiac Street making his turn; he observed the alley when he made the turn. He observed no signals on the stopped vehicles.

Further, on cross examination defendant-appellee admitted that in his deposition on July 14th he said that the two cars in the middle of the street were backing up to park at the curb.

We agree with defendant-appellee that an alley intersecting a public street or highway is not an "intersection" as defined by the Indiana statutes and we further agree that under the city ordinances of the City of Fort Wayne, Indiana, such is not an "intersection."

The evidence in our opinion is conclusive that the plaintiff-appellant prior to emerging from the alley had made a complete stop, looked in both directions, and then after being motioned onto Pontiac Street by Mr. McCowan who was parked on Pontiac Street preparatory to turning right into the alleyway occupied by plaintiff-appellant's car she again looked in both directions on Pontiac Street and defendant-appellee's car was not yet in sight.

Witness McCowan testified that plaintiff-appellant was stopped in the alley; that he stopped in Pontiac Street preparatory to turning into the alley. There is no evidence in the record from any witness to the contrary and the fact that the plaintiff-appellant did stop and look both ways before entering Pontiac Street is without dispute.

It is further without dispute that no car was approaching from the rear of Mr. McCowan or Mr. Smith at the time Mr. McCowan motion plaintiff-appellant to leave the alleyway and surrendered the right-of-way to her on Pontiac Street so Mr. McCowan could enter the alley. The facts are undisputed that defendant-appellee laid down skid marks 58 feet in length and struck plaintiff-appellant's Ford automobile on the left rear fender, bending and denting the same inwardly and cutting and ripping a hole about 3 inches above the bottom

of the fender from 12 to 20 inches long, as evidence by physical evidence, the same being plaintiff's exhibits 1 and 2, which were pictures of the automobile she was driving and taken after the collision.

Physical evidence such as demonstrated by photographs duly made a part of the record may be properly considered to determine the question of negligence on the part of the defendant-appellee in failing to keep a lookout and as to the speed which the defendant-appellee was driving in a 30 mile zone in the City of Fort Wayne. *Samuel-Hawkins Music Co., Inc.* v. *Ashby* (1965), 246 Ind. 309, 314, 205 N. E. 2d 679.

In the cited case the court said:

". . . There was also much photographic evidence by both parties showing the scene as it existed and vividly demonstrating the view each driver had at the time.
The collision occurred in broad daylight at 2:30 in the afternoon. The jury unquestionably under this evidence was properly permitted to consider the question of negligence on the part of appellant truck driver in failing to keep a lookout. *Lookout as well as speed, under the authorities, may be established by proof of physical facts and circumstances.* 3 I. L. E., Automobiles, § 115, p. 467. . . ." (Our emphasis.)

See, *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 684, 122 N. E. 2d 734, 736; and *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 243, 132 N. E. 2d 919, wherein the court said:

"Physical facts and circumstances are often more convincing than words. As stated by the Appellate Court in *Magazine* v. *Shull* (1845), [sic] 116 Ind. App. 79, at p. 85, 60 N. E. 2d 611:
" 'Evidence is that which tends to produce conviction in the mind as to the existence of a fact. *The Evansville, etc., Railroad Co.* v. *Cochran* (1858), 10 Ind. 560 . . .' "

There is further evidence that the defendant-appellee turned off Hanna with the green light onto Pontiac Street which

was 106 feet west of the alley and was on his right side of Pontiac only momentarily as he was continuing his turn until he was on the left side of Pontiac Street to pass the stopped vehicles waiting at the approach to the alley. Defendant-appellee was not seen and there was no car to the rear of McCowan and Smith on Pontiac Street between the alleyway and Hanna at the time plaintiff-appellant took her second look for traffic and was waved across the street by Mr. McCowan. She then, from a stationary position, drove from her parked position up to and a few feet beyond the middle of Pontiac Street and was starting to turn left around Mr. McCowan's car when she was first attracted to the car of the defendant-appellee by the skidding of tires and the sounding of his horn and, in a last desperate effort, accelerated her car and attempted to go straight down the alley and avoid being struck.

Defendant-appellee did not see plaintiff-appellant prior to the time the front end of her car emerged on the north side of Pontiac Street from in front of the McCowan car. The evidence is undisputed that he drove 106 feet east on Pontiac Street and first saw and observed her when his car was to the rear end, or west, of the Smith car, which was about three car lengths west of the west line of the alley; and it was further undisputed that when his car passed Mr. Smith the tires were skidding and he was blowing his horn and he continued on forward, past Mr. McCowan's car and into plaintiff-appellant's automobile, striking the same and rendering the damage thereto as hereinabove set out. This evidence, combined with Mr. Mauricio's cross examination that he saw the two cars stopped in the middle of the street and decided to go around them because nothing was coming from the opposite direction and that he never thought for one second why the cars were stopped in the middle of the street west of the alley is conclusive evidence that Mr. Mauricio, defendant-appellee, completely failed to keep his automobile under control so as to avoid a collision with plaintiff and her

vehicle. And further, the evidence is conclusive that Mr. Mauricio, defendant-appellee, completely failed to maintain and keep a lookout for persons or automobiles lawfully entering said Pontiac Street, including plaintiff-appellant and her said automobile, all as charged in plaintiff's complaint.

In our opinion there was sufficient evidence that this collision and the resulting injury and damages to the plaintiff-appellant resulted from the negligence of the defendant-appellee as charged in plaintiff's complaint, rhetorical paragraph 4, subsections B and C, namely, the failure of the defendant-appellee to keep a lookout and the failure of the defendant-appellee to keep his vehicle under control so as to avoid a collision with the plaintiff and her vehicle.

In our opinion, these two specifications of negligence as charged are proven under evidence on which there is no conflict and, considering only the evidence most favorable to the defendant-appellee, such evidence can lead to but one conclusion in the minds of reasonable men, and that the trial court did in this case reach an opposite conclusion and therefore the special findings of fact and the conclusions of law written by the defendant and adopted by the court are contrary to law and must be set aside.

Defendant-appellee discusses the case of *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629. This case held:

"On appeal, when the sufficiency of the evidence is questioned, we do not weigh the evidence, but we examine the record to see if there is any evidence, or any reasonable or logical inference which may be drawn from the evidence, which if believed by the jury would sustain the verdict. [Citing cases.]"

In *Gamble* v. *Lewis* the jury found for the plaintiff-appellee and that plaintiff-appellee was free from negligence which was the proximate cause of the collision. The defendants-appellants contended that the finding was not sustained by sufficient evidence and was contrary to law. The court, in answering these diametrically opposed contentions, said:

"By the verdict, the jury found that the appellee was free from any negligence, however slight, which was a proximate cause of the collision. The appellants contend that this finding was not sustained by sufficient evidence and was contrary to law. *If the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury; but if the facts are not in dispute, or if the facts most favorable to the proponent, together with all reasonable and logical inference that may be drawn therefrom be assumed as true, and reasonable men could draw only one inference from such assumed facts and inferences, then the question of negligence becomes one of law for the court.* [Citing cases.] \* \* \*" (Our emphasis.)

It is to be noted that our Supreme Court, in the *Gamble* case, spoke in the conjunctive when it said: ". . . but if the facts are not in dispute, *or* if the facts most favorable to the proponent . . ." (Our emphasis.)

Defendant-appellee testified that he entered Pontiac Street with the green light and his speed was such that he crossed the center line thereof and immediately turned back to the left side of Pontiac Street and was on the right side only a matter of a few feet.

Defendant-appellee was asked the following questions, to which he gave the following answers:

"Q. Tell us, from where you were behind those cars, could you see anything into that alley, or did those cars block your view of the alley?

A. Those cars sort of blocked my view from the alley and I couldn't see the alley until she run out from the alley.

\* \* \*

Q. Now, when you were proceeding on Hanna Street you were heading in which direction?

A. South on Hanna.

Q. Did you have to stop for a light at any time?

A. No. I had the light, green light.

Q. You had the green light and you made a right turn, a left turn?

A. I made a left turn.

Q. After you made the turn, what did you observe about this street here, Pontiac?

A. Pontiac?

Q. The seven hundred block? Did you see those two cars stopped there?

A. I seen those two cars stopped and I went around them.

Q. At the time that you made the turn, did you see the two cars stopped here?

A. Yes, that's why I went around them.

Q. Actually, did you ever go into the eastbound lane?

A. For a little bit and then I went around the cars, yes.

Q. You went like this then (indicating on the blackboard with model cars)? You went suddenly down and then up?

A. Not quite that sharp like you done it there.

Q. Was there anything there to obstruct your vision at all on Pontiac Street other than these two cars?

A. Nothing else.

\*  \*  \*

Q. So, you have a pretty clear shot going through Pontiac Street?

A. Yes.

Q. After you make the turn?

A. Yes.

Q. Did you observe the alleyway there when you made the turn?

A. Did I slow down for the alley?

Q. Did you observe the alleyway?

A. I don't understand what you mean about—

Q. Did you see the alleyway when you made the turn?

A. Yes. I noticed an alley there.

Q. Did you observe it at that time, did you see it when you made the turn?

A. Yes.

Q. And, you didn't see any vehicle there at that time coming out?

A. Until the car come out of there from in front of those two automobiles.

\* \* \*"

There were the further facts that the eye witnesses, McCowan and Smith, did look back and did not know his car was there until such time that it was skidding past Smith's car when he first saw it and it skidded a total of 58 feet, a part of which distance was beyond McCowan's car, and struck plaintiff-appellant with such force that it slid her car around, tearing a long hole in the fender and during that time he was sounding his horn and plaintiff-appellant was accelerating her car and continuing a straight forward course in an attempt to avoid being struck.

Again, under the guidelines laid down in *Gamble* v. *Lewis, supra,* we go from the undisputed facts to the conjunctive and in so doing we consider the facts most favorable to the defendant-appellee, together with all reasonable and logical inferences that may be drawn therefrom be assumed as true. We are of the further opinion that reasonable men could only draw one inference from such proven facts, with reasonable inferences therefrom, and that being that the defendant-appellee failed to keep a lookout and failed to keep his vehicle under control so as to avoid colliding with others lawfully upon the highway; and he further paid no attention and gave no thought as to why the two vehicles were parked in the middle of Pontiac Street west of the alleyway from which plaintiff-appellant entered Pontiac Street, then, the question of negligence has become a question of law for the court.

". . . It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law. *Losche & Sons* v. *Williams & Associates* (1948), 118 Ind. App. 392, 78 N. E. 2d 447, supra." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.

Further, in the *Gamble* v. *Lewis* case, *supra,* the court said:

"Likewise, the question of proximate cause is generally a question for the jury to determine, but it may become a question of law for the court under the same circumstances that negligence becomes a question of law. [Citing cases.]"

IC 9-4-1-84, Ind. Stat. Ann. § 47-2029 (Burns 1965 Repl.) provides:

"47-2029. Entering highway from private road or driveway. The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway."

IC 9-4-1-83, Ind. Stat. Ann. § 47-2028 (Burns 1965 Repl.), Entering through highway or intersection—Obedience to yield signs, provides that the driver of a vehicle shall stop as required by the motor vehicle act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but that said driver having yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

Although the alleyway is not considered an "intersection" with Pontiac Street in Fort Wayne, either by statute or city ordinance, the evidence is undisputed that plaintiff-appellant did stop and yield the right-of-way to motor vehicle traffic on Pontiac Street. After so yielding the right-of-way, looking both ways two times and seeing no motor vehicles in either direction except the two cars parked, of which the first was waiting to gain admission to the alleyway, plaintiff-appellant did proceed into Pontiac Street, using due care. Having once yielded the right-of-way and having proceeded to enter Pontiac Street with caution then the burden

fell upon the defendant-appellee to yield the right-of-way to her and for him to proceed with caution and use due care for her safety and to avoid colliding with her.

In the case of *Jones* v. *Cary* (1941), 219 Ind. 268, 281, 283, 284, 37 N. E. 2d 944, the complaint alleged that the appellants:

". . . *'carelessly and negligently failed to keep said automobile under control* so that the same could be driven and operated to the north of a certain automobile driven by the defendant, Albert Southwood, then and there approaching from the west.' This charge of the complaint would authorize the introduction of evidence that appellants were driving too fast, that they were inattentive to their driving or that they were driving while under the influence of intoxicating liquor." (Their emphasis.)

The court said as to this allegation of failing to keep the car under control that if the jury properly found from the evidence that Southwood was driving his automobile on the right side of the road and using ordinary care, he could not have been guilty of any negligence which was the proximate cause of the injury, and:

"And, if, *on the other hand,* the jury properly found from the evidence that as the two automobiles so approached each other Hebenstreit, without any excuse or reason, 'suddenly swerved to the south and to the left . . . thereby striking the automobile which defendant, Southwood, was driving,' with ordinary care on the south, or on his right hand side of the center line of said highway, such driving by said Hebenstreit constituted negligence as a matter of law. . . ." (Our emphasis.)

The court said further:

". . . While the violation of such a statutory regulation does not conclusively establish negligence, it is *prima facie* evidence of negligence and places on the opposing party the duty of producing evidence to show a valid excuse for such violation. [Citing cases.] So, here, the burden was on the appellants to produce evidence of facts which would excuse Hebenstreit for driving on the

left side of the center of the highway as he approached the Southwood automobile. The evidence fails to disclose any basis for an inference that there was any reason or excuse for Hebenstreit driving to the left of the center of the highway as he approached the Southwood automobile. While ordinarily the question of proximate cause in a negligence case is a question of fact for the determination of the jury, if the facts are undisputed and are such that reasonable men could draw but one inference as to the proximate cause of the injury, then the question of proximate cause is a question of law for the court. *Pittsburgh, etc., R. Co.* v. *Sudhoff* (1910), 173 Ind. 314, 90 N. E. 467."

This court is of the further opinion that the facts in the case at bar wherein the complaint charges failure to keep a lookout and failure to drive and keep his automobile under control so as to avoid a collision come within the same category and rule of law as the facts in *Jones* v. *Cary, supra,* and that the law as laid down in *Jones* v. *Cary* would control.

This court agrees with defendant-appellee's contention that it is a well established rule that the weighing of the evidence and credibility of the witnesses are for the trial court and not for the appellate tribunal to determine, and where such evidence is conflicting this court will consider the evidence most favorable to the party in whose favor the judgment was entered. *Brennan* v. *Reydell* (1963), 134 Ind. App. 298, 187 N. E. 2d 492.

In the above case the court said, at pages 301, 302 of 134 Ind. App.:

" ' "The term 'discretion' denotes the absence of a hard and fast rule. *The Styria* v. *Morgan,* 186, U.S. 1, 9. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." '

"We, under the foregoing authorities, cannot say, as a matter of law, that the trial court abused its discretion in this case.

"In reviewing the evidence contained in the record, it appears there is some conflict therein. It is the well-

established rule that the weight of the evidence, the credibility of the witnesses are for the trial court and not the appellate tribunal to determine, and where such evidence is conflicting, this court will only consider the evidence most favorable to the party in whose favor the judgment was entered. Sec. 2786, Flanagan, Wiltrout & Hamilton's, Indiana Trial and Appellate Practice, and authorities cited therein."

This court said, in *Pontious* v. *Littleton* (1970), 146 Ind. App. 369, 255 N. E. 2d 684, 691:

"This court cannot, and will not, weigh the evidence; that was the duty of the trial court, who saw and observed the witnesses on the stand, took into consideration their truthfulness, their bias and interests in the case, and was in a better position to understand the evidence, draw inferences therefrom, and determine the truth of the collision in question.

"* * * Where the evidence is conflicting, in determining whether a finding in favor of appellee is warranted, only the uncontroverted facts and the evidence most favorable to appellee and the favorable inferences that may be drawn therefrom can be considered on appeal. [Citing cases.]"

Inasmuch as there is dispute as to the rate of speed defendant-appellee was driving under the conditions then and there existing; inasmuch as defendant-appellee is charged with carelessly and negligently failing to apply his brakes in time to avoid striking plaintiff-appellant's automobile and the evidence did show the striking, but also showed the laying down of 58 feet of skid marks; inasmuch as defendant-appellee was charged with carelessly and negligently driving on the wrong lane of traffic when he was passing the two cars and was not meeting one; and inasmuch as the defendant-appellee was charged with passing within 100 feet of an intersection in violation of the Indiana statutes and the alleyway crossing Pontiac Street did not constitute an intersection, this court must necessarily hold that these specific charges of negligence on defendant-appellee's part were in issue and were questions of fact for the court to determine

and the evidence on these last specifications cannot be weighed by this court.

Specification F is immaterial to the issues of this complaint and should have been stricken therefrom, as the alley crossing the street does not constitute an intersection as defined by statute.

We have heretofore stated in this opinion that the burden was on the plaintiff-appellant to prove one or more of the material allegations of her complaint before she was entitled to recover. We have found as a matter of law that she has done so, as to specifications 4 (B) and 4 (C).

We are of the opinion that defendant-appellee's failure to maintain a proper lookout and his failure to keep his car under control to avoid colliding with and injuring other persons and property lawfully upon the highway was the sole proximate cause of plaintiff-appellant's alleged injuries and damages.

This court having heretofore determined that the trial court committed reversible error on one or more of the specifications relied upon by plaintiff-appellant in her motion to correct errors, we are not required to discuss other specifications in plaintiff-appellant's brief. *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N. E. 2d 127; *Finney* v. *L. S. Ayres* (1965), 137 Ind. App. 430, 207 N. E. 2d 642.

The trial court having committed reversible error in finding for the defendant-appellee and against the plaintiff-appellant as to specifications 4(B) and 4(C) of the complaint, this court now orders this cause reversed and remanded to the Superior Court of Allen County, Indiana, for a new trial.

Robertson, P.J., Lybrook, J., concur.

NOTE.—Reported in 279 N. E. 2d 814.