Charles **MOEHLENKAMP** et al.,
**Defendants-Appellants,**

v.

David M. **SHATZ, Plaintiff-Appellee.**

No. 1–779A195.

Court of Appeals of Indiana,
First District.

Nov. 7, 1979.

Rehearing Denied Dec. 12, 1979.

---

Timothy R. Dodd, Evansville, for defendants-appellants.

John D. Clouse, Michael C. Keating, Evansville, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Dave M. Shatz brought an action on a promissory note and to foreclose a mortgage on real estate owned by Gertrude Moehlenkamp and the late Dr. Charles Moehlenkamp as tenants by the entirety. Gertrude Moehlenkamp appeals a judgment in favor of Shatz.

Affirmed.

## FACTS

The evidence most favorable to the trial court's judgment reveals that Dr. Moehlenkamp handled the business affairs of the family, including the purchase of real estate, the securing of loans, and the filing of income tax returns. During their marriage of thirty-six years, Mrs. Moehlenkamp signed only a few of their joint income tax returns, and she gave no thought to how the others were filed. She paid no attention to Dr. Moehlenkamp's conduct of the family's business affairs. The manner in which he conducted the business affairs was satisfactory to her.

Dr. and Mrs. Moehlenkamp had owned a farm in Vanderburgh County as tenants by the entirety since 1969. The Moehlenkamps executed a mortgage on this farm to the Haubstadt State Bank in 1974.

At some time prior to the execution of that mortgage, Dr Moehlenkamp executed two promissory notes of slightly under $40,000.00 each in favor of a man named Nance,[1] who eventually sold them to Shatz. Dr. Moehlenkamp defaulted on the notes, and in 1974 Shatz allowed him to exchange two new notes of $40,000.00 each, executed solely by Dr. Moehlenkamp, for the two overdue notes. Dr. Moehlenkamp again defaulted, and in 1975 Shatz allowed Dr. Moehlenkamp to exchange a note of $87,-666.67 and a second mortgage on the farm for the overdue notes. This time, however, the note and mortgage bore what purported to be the signatures of Gertrude Moehlenkamp in addition to those of Charles Moehlenkamp. Shatz did not see Mrs. Moehlenkamp sign the note and mortgage, because they were mailed to him after execution.

The Moehlenkamps made no payments on this last note. In 1976, Shatz filed suit against the Moehlenkamps on the note for damages and to have the mortgage foreclosed. Shatz named the first mortgagee, Haubstadt State Bank, as a party defendant as well. The bank cross-claimed against the Moehlenkamps for foreclosure of its mortgage. On the day of trial, Mrs. Moehlenkamp filed, without objection, a *non est factum* defense against both Shatz and the bank. During the pendency of the lawsuit, Dr. Moehlenkamp died, and his estate, by its personal representative, Gertrude Moehlenkamp, was substituted as a party. The suit was tried to the court, which entered judgment in favor of both Shatz and the bank against Mrs. Moehlenkamp. On appeal, Mrs. Moehlenkamp challenges only Shatz's judgment against her.

## ISSUE

The issue in this appeal is whether the judgment in favor of Shatz on the note and foreclosing the mortgage, on property owned by the Moehlenkamps as tenants by the entirety prior to Charles' death, is supported by sufficient evidence.

## DISCUSSION AND DECISION

Mrs. Moehlenkamp maintains that there is no evidence that she personally signed the note and mortgage or that whoever did sign her name was authorized to do so.[2]

With regard to the question of authorization to sign her name, Mrs. Moehlenkamp concedes that, arguably, an implied agency may have been created by Dr. Moehlen-

---

1. The record does not indicate whether Mrs. Moehlenkamp signed these original notes.

2. The trial court did not indicate in its judgment entry which theory it relied upon in holding Mrs. Moehlenkamp liable on the note and mortgage.

kamp's having signed other documents for her over the years. However, she asserts that any applicability of such an implied agency to this case is refuted by her express statement to her husband that she did not want him to encumber the farm. Mrs. Moehlenkamp refers us to the transcript of her testimony during direct examination at trial. After a discussion of the note and first mortgage held by the bank, the following exchange took place:

"Q. When you received the phone call from Mr. Wheeler, [President of Haubstadt State Bank,] did you talk to your husband about it?

A. Yes.

Q. What was the general tone of the conversation?

A. I just asked him about it, if there was a loan on the farm, and he told me that there was.

Q. Is that the first time you knew about the loan on the farm?

A. Yes.

Q. Did you express any displeasure at him having made a loan on the farm?

A. Well, he knew I was displeased about it.

Q. Had you ever had any conversations with your husband prior to that time about the farm being some sort of security for you?

A. Well, from time to time, some remark would be made in that respect.

Q. Had you ever indicated to him that you did not want him to make loans on the farm?

A. Yes, I had.

Q. On how many occasions?

A. One.

Q. And would you describe that again for us, please?

A. That was the time, a number of years previously, that he had taken out a loan and he made all the arrangements and had not said anything to me until he asked me to go and sign for it, and seeing he had already made the arrangements, I went and signed, but I told him that I didn't like him taking a loan on it, and that I would rather he not do that anymore.

Q. This was the time, I believe, you testified that he went to the Old National Bank at Main and Indiana.

A. That's right.

Q. When did you first become aware of the fact David Shatz had a mortgage on the farm?

A. When you informed me after my husband's death?" (Our insertion)

▮ Indiana recognizes a kind of agency relationship which is implied from the actions and circumstances of the parties. While marriage does not in itself create an agency relationship between spouses, the marital relationship is one of the facts and circumstances to be considered in determining the existence of an agency relationship. As the Appellate Court said in *Martz v. Selig Dry Goods Co.,* (1921) 76 Ind.App. 135, 137–38, 131 N.E. 528, 529:

"* * * A husband may, however, constitute his wife his agent so as to render her acts, within the scope of her authority, binding on him. A contract of agency between a husband and wife may be express or implied, and rests on the same considerations which control the creation and existence of the relation of principal and agent between other persons. *Milhollin v. Milhollin* [(1919), 71 Ind.App. 477,] 125 N.E. 217. The authority of a wife to act as agent of her husband, when implied, must be implied from acts and conduct, and not merely from her position as wife. *Bergh v. Warner* [1891], 47 Minn. 250, 50 N.W. 77, 28 Am.St.Rep. 362. The fact of marital relation is a circumstance, however, which may be considered along with other facts and circumstances in determining the question as to whether or not there is an implied agency. *Roper v. Cannel City Oil Co.* [(1918), 68 Ind.App. 637,] 121 N.E. 96. The authority of a wife to bind her husband as his agent may be implied from his conduct in permitting her to contract other bills of a similar nature, or in paying such bills previously incurred. *Bergh v. Warner, supra.* * * *"

Furthermore, IC 1971, 26–1–3–403(1) (Burns Code Ed.) provides that no particular form of appointment is necessary to authorize an agent to sign his principal's name on a negotiable instrument and that such authority may be established in the same manner as any other kind of agency authority.

■ The evidence most favorable to the judgment clearly indicates that it was quite common for Dr. Moehlenkamp to transact business, file income tax returns, and the like on behalf of himself and Mrs. Moehlenkamp without consulting her or obtaining her signature where it was needed. It is apparent that he frequently signed her name himself and that this practice was agreeable to her. However, Mrs. Moehlenkamp believes that her testimony quoted above necessarily precludes the operation of an implied agency authority to sign her name on the note and mortgage in question. We disagree. At the outset, we note that it was the trial court's function to judge the credibility of Mrs. Moehlenkamp's testimony. *Greene v. Mauricio,* (1972) 151 Ind.App. 320, 279 N.E.2d 814. Even if the trial court accepted her testimony as completely accurate, that evidence would not unequivocally establish that she had effectively limited her husband's authority to sign her name to a note and mortgage on the farm. What Mrs. Moehlenkamp's testimony tends to show is that on one occasion, at the time of an earlier loan (which is not at issue in this lawsuit), she had indicated to her husband that she preferred that he not use the farm as security for any more loans. However, after he later mortgaged the farm to the Haubstadt State Bank, she apparently did not protest. Instead, she was content in the belief that her husband "knew . . . [she] was displeased about it." We hold that in light of the long history of Dr. Moehlenkamp's conduct of his wife's business with her tacit approval, coupled with her failure to effectively revoke his implied authority to sign her name by dissenting to his earlier execution of the bank's note and mortgage on her behalf, there is substantial evidence of probative value to support the trial court's judgment on the theory of implied authority.

Furthermore, we have also determined that the trial court could reasonably have found that Mrs. Moehlenkamp personally signed the note and mortgage held by Shatz.

Mrs. Moehlenkamp argues, however, that there is no evidence that she signed the note or mortgage and that the *only* probative evidence in the record reflecting on the authenticity of her signatures shows that she did not sign them. She contends that she properly raised her *non est factum* defense [3] by filing the required sworn denial of execution of the note and mortgage under Ind.Rules of Procedure, Trial Rule 9.[4]

Shatz argues that Mrs. Moehlenkamp's denial was not filed until the day of the trial. He says that she, therefore, failed to comply with Ind.Rules of Procedure, Trial Rule 9.2(B), which requires the denial to be filed in or with the responsive pleading. He further argues that her testimony to the effect that she did not sign the note or mortgage was not binding on the trial court

3. A plea of *non est factum* is a denial of the execution of a written instrument. *Vincennes Savings & Loan Ass'n v. Robinson,* (1939) 107 Ind.App. 558, 23 N.E.2d 431, 24 N.E.2d 558.

4. Mrs. Moehlenkamp is apparently referring to Ind.Rules of Procedure, Trial Rule 9.2. Paragraph (B) of that rule provides as follows:
"(B) PROOF OF EXECUTION OF INSTRUMENTS FILED WITH PLEADINGS. When a pleading is founded on a written instrument and the instrument or a copy thereof is included in or filed with the pleading, execution of such instrument, indorsement, or assignment shall be deemed to be established and the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action without proving its execution unless execution be denied under oath in the responsive pleading or by an affidavit filed therewith. A denial asserting that another person who is not a party did execute the instrument, indorsement, or assignment may be made without such oath or affidavit only if the pleader alleges under oath or in an accompanying affidavit that after the exercise of reasonable diligence he was unable to make such person or his representative (subdivision (H)) a party, the reason therefor, and that he is without information as to such execution."

and that, therefore, the court could properly have found that the presumption of execution created by Ind.Rules of Procedure, Trial Rule 9.2(D) was not rebutted.

■ We note that Shatz, by counsel, failed to object to the filing, on the day of the trial, of the denial of execution. He thereby waived his opportunity to complain about the untimeliness of the denial of execution. *See Hawke v. Maus,* (1967) 141 Ind.App. 126, 226 N.E.2d 713.

■ However, the filing of the denial of execution of the note and mortgage pursuant to T.R. 9.2(B) did not conclusively establish that the signatures were not those of Mrs. Moehlenkamp. There was substantial evidence of probative value upon which the trial court could find that Mrs. Moehlenkamp personally executed those instruments.

A presumption in favor of the execution of a written instrument is established by T.R. 9.2(D).[5] However, the filing of the denial of execution and the testimony of Mrs. Moehlenkamp to the effect that she did not sign the note or mortgage were sufficient to rebut the presumption. Having rebutted the presumption, she further argues that there was no additional evidence to show that she executed the note or mortgage. With this contention we disagree.

■ The signatures of Charles and Gertrude Moehlenkamp on the mortgage were notarized, but the Notary Public was not called by either party to testify. However, the jurat on the mortgage, although not conclusive, IC 1971, 32–1–2–29 (Burns Code Ed.), is substantial and probative evidence of due execution of the mortgage.

■ The promissory note is not notarized. However, the mortgage expressly states that it was given to secure a promissory note of August 5, 1975, the same day on which the mortgage was executed. The

mortgage repeats the terms of that note. Furthermore, the note states that it is secured in favor of Shatz by a mortgage on real estate in Vanderburgh County, dated August 5, 1975, and executed by Charles and Gertrude Moehlenkamp. These cross-references raise an inference that Mrs. Moehlenkamp did, in fact, execute the note as well as the mortgage.

■ A challenge to the sufficiency of the evidence will fail where we find substantial evidence of probative value to support the trial court's findings and judgment. *Hall v. Indiana Department of State Revenue,* (1976) Ind.App., 351 N.E.2d 35. We hold that there was sufficient evidence to support the judgment of the Vanderburgh Superior Court either on an implied agency theory or on the theory that Mrs. Moehlenkamp personally executed the note and mortgage held by Shatz.

Mrs. Moehlenkamp also argues that there is no evidence that she received any benefit from the proceeds of the note and mortgage. She contends that the mere payment of money to a husband is not a benefit to the wife such that her interests could stand as collateral for a loan, citing *Fuqua v. Merchants Loan & Savings Association,* (1944) 114 Ind.App. 607, 54 N.E.2d 287, and *Pension Fund of Disciples of Christ v. Gulley,* (1948) 226 Ind. 415, 81 N.E.2d 676. She further argues that the evidence does not indicate that her husband received any consideration for the notes originally issued to Nance or that he received any consideration from Shatz by virtue of their transactions.

■ The notes for which the current note and mortgage were exchanged were executed only by Dr. Moehlenkamp. Nonetheless, the exchange of the two overdue notes—upon which Shatz could have sued—for the new note and mortgage, signed by Dr. and Mrs. Moehlenkamp, constituted sufficient consideration for the signatures of

---

**5.** Trial Rule 9.2(D) provides as follows:

"(D) BURDEN OF PROVING EXECUTION. The ultimate burden of proving the execution of a written instrument is upon the party claiming its validity, but execution is presumed. 'Presumed' means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its non-existence."

both Dr. Moehlenkamp and Mrs. Moehlenkamp. Forbearance from suing on a cause of action has been held to be sufficient consideration to support a promise. *McCasland v. Aetna Life Insurance Company,* (1886) 108 Ind. 130, 9 N.E. 119. It is not necessary that consideration flow directly from the payee to *both* makers of a note in order to bind the makers. *See, Isgrig v. Franklin National Bank,* (1913) 53 Ind.App. 217, 101 N.E. 398.

■ It follows that the mortgage, which expressly states that it was given as security for the note, is also not subject to attack on the ground that Mrs. Moehlenkamp did not directly benefit from the mortgage on the entirety property. *Fuqua* and *Pension Fund, supra,* are inapposite. In *Fuqua,* the husband and wife had signed a note, secured by a mortgage signed by both on entirety property. After the husband and wife had repaid part of the debt, the husband, solely in his name, withdrew some money against the amount credited to repayment and used it to pay his own business expenses. The Appellate Court held that the husband could not thereby diminish the equity in the mortgaged entirety property. In the case at bar, there was no such diminution of the equity after Dr. and Mrs. Moehlenkamp executed the note and mortgage. In *Pension Fund,* the husband had clearly forged his wife's name on certain notes and on a mortgage on their entirety property. In the case at bar, we have already found that there was sufficient evidence for the trial court to find that Mrs. Moehlenkamp had signed the note and mortgage herself or that she had authorized her husband to sign her name.

Mrs. Moehlenkamp also argues that she did not ratify the unauthorized signatures on the note and mortgage. We need not address this argument inasmuch as we have already held that the evidence would support the trial court's judgment either on a theory of implied agency authority or on a theory that Mrs. Moehlenkamp signed the note and mortgage herself.

We affirm the judgment of the Vanderburgh Superior Court.

ROBERTSON and NEAL, JJ., concur.