## DOLMAN *v.* STUDEBAKER.

CONTRACT.—*Assent of Both Parties.*—To make a contract, the parties must agree upon and assent to the same stipulations.

DAMAGES.—*Measure of for Refusal to Take Property Purchased.*—It seems that where a person agrees to make a purchase of property, and then refuses to proceed in the purchase and take the property, the loss of the bargain constitutes the proper measure of damages, and not the price of the property, the title of which has not passed.

From the St. Joseph Circuit Court.

*J. H. Baker, J. A. S. Mitchell* and *Baker, Hord & Hendricks,* for appellant.

*A. Anderson, L. Hubbard* and *W. G. George,* for appellee.

DOWNEY, J.—This was an action by the appellant against the appellee. The complaint alleges, in substance, that the parties entered into a contract, by which the defendant agreed to convey to the plaintiff a certain farm in Knox county for certain stock in the Knoblock Bros. Manufacturing Company, at South Bend, and certain payments in money in addition thereto, alleges that the defendant failed and refused to convey the land, and seeks to recover the price of the stock. The answer was a general denial.

Upon a trial by the court, there was a special finding, containing the following facts and conclusion of law:

1. That on the 3d day of February, 1873, and from that time to the present the plaintiff was, and still is, the owner

Dolman *v.* Studebaker.

of one hundred and ten shares of the capital stock of the Knoblock Brothers Manufacturing Company, a corporation located at South Bend, Indiana, said shares being fifty dollars each.

2. That, on the same day, the defendant owned one hundred and eighty-four acres of land in Knox county, Indiana, near Vincennes, known as the "Deardoff farm," and that the defendant continued to own said land until the 26th day of March, 1873; and at that date the defendant did, and still does, reside at South Bend, Indiana; and that the plaintiff, at said time, resided at Indianapolis, though his family were at Columbus, Ohio, and the plaintiff had made arrangements so that letters directed to him at Columbus should be forwarded to him at Indianapolis.

3. That on the 3d day of February, 1873, the defendant wrote to the plaintiff the following letter:

"SOUTH BEND, IND., February 3d, 1873.

"Mr. Dolman: Sir—How would you like to trade your stock in the K. B. M'f'g Co. for a good farm in this State? If you desire to make a trade, I will give you a good trade.

"Yours truly,

"C. STUDEBAKER."

That, on the 6th day of February, 1873, the plaintiff wrote and addressed to the defendant the following letter:

"INDIANAPOLIS, IND., February 6th, 1873.

"Mr. Clem Studebaker: Sir—Your note of the 3d inst. was forwarded to me, reaching me this day. I would trade my stock mentioned for real estate; and if you will send me description of the farm, giving me necessary particulars, I will investigate the matter and let you know. State your best terms, as if you meant business. Direct to me at," etc.

"JOHN H. DOLMAN."

On the 10th of February, 1873, the defendant wrote and addressed to the plaintiff the following letter:

"SOUTH BEND, February 10th, 1873.

"John H. Dolman, Esq.:" etc. * * * "The farm I referred to is in Knox county," etc. "There is about forty

acres in clover, and, I believe, fifty acres in wheat, which I get a share of, which I will let go with the farm," etc. "I will trade you the farm at eight thousand five hundred dollars, and take your stock at one dollar and twenty cents on the dollar," etc. "If you have any notion of trading, I would be glad to hear from you again.

"Yours truly,

"C. STUDEBAKER."

On the 12th day of February, 1873, the plaintiff replied to the defendant as follows:

"INDIANAPOLIS, February 12th, 1873.

"Mr. C. Studebaker: Dear Sir—I have just received your letter in relation to the farm in Knox county. I am favorably inclined to trade, and if you will send me a description," etc., "I will see about it," etc.

"Yours, etc.,

"JOHN H. DOLMAN."

On the 15th day of February, 1873, the defendant wrote the plaintiff as follows:

"SOUTH BEND, IND., February 15th, 1873.

"John H. Dolman, Esq.:" etc. "Yours of the 12th inst. is at hand," etc. After giving desired information, the writer says: "I will hold the offer subject to your acceptance till the 25th of this month.

"Yours truly,

"C. STUDEBAKER."

On the 24th of February, the plaintiff wrote the defendant as follows:

"INDIANAPOLIS, IND., February 24th, 1873.

"Mr. C. Studebaker: Dear Sir—I have just returned from Vincennes, where I looked at your farm, and liked it very much. I am willing to give eight thousand dollars, giving in payment my stock in the K. B. M. Co., at one dollar and twenty cents, and the balance in two equal payments of one and two years, with interest," etc.

"Yours, etc.,

"JOHN H. DOLMAN."

Dolman *v.* Studebaker.

On the 26th day of February, 1873, the defendant wrote the plaintiff as follows:

"SOUTH BEND, February 26th, 1873.

"John H. Dolman," etc.—"Yours of the 24th at hand. I cannot accept your proposition. 1 have an offer of all cash down for the farm, but do not think 1 will accept it. I am going down there next week, and will see you on my way down or on my return," etc.

"Yours truly,

"C. STUDEBAKER."

4. That, on the 5th day of March, 1873, the defendant went through Indianapolis, on his way to Vincennes, and then had a conversation, at Indianapolis, with the plaintiff, in regard to the trade mentioned in the foregoing letters, and it was then agreed between them that if they should thereafter trade, the difference between the value of the land and the stock should be paid by the plaintiff to the defendant in one and two years, with interest; and it was then understood by both of them that the land was not worth eight thousand dollars in cash, nor the stock worth one dollar and twenty cents on the dollar; that Studebaker then went on to Vincennes, and made a contract for the sale of the land to another person, and so informed Dolman in a day or two afterwards, and thereupon the pending negotiations for the trade mentioned in said letters were broken off.

5. That afterwards, on the 15th day of March, 1873, the defendant wrote to the plaintiff the following letter:

"SOUTH BEND, IND., March 15th, 1873.

"John H. Dolman," etc.—"There is a likelihood of my trade in the farm falling through. Do you want to make the trade we talked of, provided it does? * * Let me know whether you want to trade on my offer.

"Yours in haste,

"C. STUDEBAKER."

On the 20th day of March, 1873, the plaintiff wrote to the defendant as follows:

VOL. LII.—19

"COLUMBUS, OHIO, March 20th, 1873.

"Mr. C. Studebaker," etc.—  *  *  *  *  "As I am just about concluding a trade for my stock, I will say now that I will trade with you at your offer, if I can know soon. So answer me here by telegraph, on receipt of this.

"Yours very truly,

"JOHN H. DOLMAN."

That, on the 26th day of March, 1873, the defendant, in reply to said letter of March 20th, sent the plaintiff the following telegram:

"To John H. Dolman, Spencer House: You can have the farm at first proposition with you.

"CLEM STUDEBAKER."

That, on the 25th day of March, 1873, the plaintiff had written to the defendant the following letter, which was not received till after the transmission of the telegram of March 26th:

"INDIANAPOLIS, IND., March 25th, 1873.

"Mr. C. Studebaker," etc.—"I wrote you from Columbus, in answer to yours of the 15th instant, saying I would trade at your offer for the farm, and asking you to answer by telegraph. I have not heard from you yet. How is it? Let me know as soon as possible. Direct here, care of the Spencer House," etc.

"Yours, etc.,

"JOHN H. DOLMAN."

6. That on the 26th day of March, and about an hour subsequent to sending the telegram aforesaid, the defendant was informed by his agent in Vincennes that he had sold the farm for seven thousand dollars; and that, in fact, the farm had been sold by the agent before the telegram aforesaid was sent, but the fact was then unknown to the defendant; that about that time the defendant became very sick and was unable to attend to any business; that about the 1st of April, 1873, he procured George Milburn to write a letter for him to the plaintiff, informing him that the defendant's agent had sold the land, but this letter was

never received by the plaintiff. On the 5th day of April, 1873, the plaintiff wrote to the defendant the following letter :

"INDIANAPOLIS, IND., April 5th, 1873.
"Mr. C. Studebaker," etc.

"I am patiently waiting to hear from you in relation to the farm. I received your telegram saying I could have the farm, and that you would write me. I had accepted the proposition in my previous letter to you. I am now waiting for the papers. I suppose I will have to make arrangements for seeding a portion of the place this spring, and it is about time to begin. Let me hear from you as soon as you can possibly.          Yours, etc.,

"JOHN H. DOLMAN."

That on the 8th day of April, 1873, one John H. Harper wrote to plaintiff the following letter :

"April 8th.
"John H. Dolman," etc.

"Your favor of the 5th is at hand, and in reply will say that Mr. C. Studebaker was taken down with a severe illness last Sunday, and has not been able to do any business since. We are, however, of the opinion the farm is sold to another party. As soon as he is able to be talked to we will advise you.

"STUDEBAKER BROS. MAN'F'G CO., HARPER."

On the 14th day of May, 1873, the plaintiff wrote to the defendant the following letter :

"INDIANAPOLIS, IND., May 14th, 1873.
"Mr. C. Studebaker," etc.

"I was pained to hear of your severe illness," etc.  "I am anxiously waiting to close up our trade for the farm at Vincennes, and hope, if you are able, that you will give the matter your early attention," etc.

"Yours, etc.          JOHN H. DOLMAN."

On the 21st day of May, 1873, the defendant wrote to the plaintiff that the farm had been sold to another party. The defendant refused to convey the farm to the plaintiff, or

accept the stock. The defendant was guilty of no fraud-
ulent conduct, but refused to convey the land or accept the
stock because of the sale of the land made by his agent prior
to his sending said telegram to the plaintiff; that from the
26th day of March to the 21st day of May, said stock was
worth the sum of five thousand dollars, and the farm was
worth seven thousand dollars; that prior to the 3d day of
February, 1873, plaintiff gave authority, commonly known
as a proxy, to Merritt H. Baker, authorizing him to attend
meetings of the Knoblock Brothers Manufacturing Co., and
vote his stock, and that on the 20th day of April, 1873,
Baker did attend a meeting of the stockholders of the com-
pany, and take part therein; that on or about the 22d day
of November, 1873, plaintiff did revoke and annul said writ-
ten authority; that prior to the 21st day of November, 1873,
plaintiff placed the certificates for all of his stock in said com-
pany in the hands of Baker and Mitchell, of Goshen, assigned
in blank, and did empower them to transfer and assign
said stock to defendant, and on the 21st day of November,
1873, they, as agents of plaintiff, acting under said authority,
made a tender of the stock to the defendant, and offered to
deliver and assign said certificates to him and to comply
with the contract, and that the defendant refused to accept
the stock or certificates, and always has and still does refuse
to accept the same, and denied that there was any contract;
that on the trial of the cause the plaintiff continued the ten-
der of the stock, but the same had not been assigned on the
books of the company. The certificates of stock are set out
in the special finding. It was further found that the plain-
tiff had not tendered the balance of one thousand nine hun-
dred dollars, which would be due to the defendant, or
offered to execute any obligation therefor on any terms.

"As a conclusion of law on the foregoing facts, the court
finds that there was no contract made between the plaintiff
and defendant as stated in the complaint." Judgment
accordingly.

There was an exception to the conclusion of law, and it is assigned as error.

It is not disputed that, to make a contract, the parties must agree upon and assent to the same stipulations. It will not do for one of them to propose one thing, and the other to propose something else. The minds of the parties must meet and agree upon the same thing. Because it did not appear that this had occurred, the circuit court found that there was no contract.

We are also of this opinion. The proposition made by the defendant in his letter of February 10th, 1873, was not agreed to by the plaintiff in his letter of February 24th, 1873. On the contrary, he proposes to put the price of the land at eight thousand dollars, instead of eight thousand five hundred dollars, and proposes to pay the difference between the price of the stock and that of the farm in two equal payments of one and two years, instead of paying it in hand, as was to be understood from the proposition of the defendant. On receipt of this letter, the proposition of the defendant in his letter of February 10th was wholly withdrawn by his letter dated February 26th.

On the 5th of March, 1873, at Indianapolis, the parties met and had a conversation about the terms of the trade should they renew their negotiations, in which event it was agreed that the difference between the price of the farm and that of the stock should be paid in one and two years, with interest. It was also agreed that both the farm and the stock were estimated above their real value in the negotiations of the parties.

In renewing their correspondence, the defendant, in his letter of March 15th, 1873, asks the question: "Do you want to make the trade we talked of?" What proposition was alluded to here? The parties had never agreed upon the price of the land. The defendant had asked eight thousand five hundred dollars, and the plaintiff had offered eight thousand dollars. They had not differed as to the price of the stock.

They had orally agreed as to the time of payment of the difference between the price of the land and that of the stock. If "the trade we talked of" is to be understood as that proposed in the letter from the defendant to the plaintiff of February 10th, as modified by the conversation at Indianapolis, which we think is the proper understanding of it, still it was not accepted by the plaintiff. He wrote, in his letter of March 20th: "I will trade with you, at your offer, if I can know soon." To this letter the defendant responded by a telegram of the 26th of March. In this he does not agree to the trade "talked of," but says: "You can have the farm at first proposition." He indicates that he had also written to the plaintiff. This letter, if one was written, is not in the record. By this telegram it is quite clear, we think, that the defendant goes back to the proposition made in his letter of February 10th, and renews it, unchanged by the oral modifications in the conversation at Indianapolis. This proposition the plaintiff never accepted. In his subsequent letters he claims that he had accepted some former offer of the defendant in his letter of the 20th of March; but this is not true, as we have already seen.

We do not decide that the contract could have been valid partly in writing and partly by parol, if the parties had agreed. What we decide is that they never agreed.

The theory of the plaintiff, that when the defendant refused to convey the land and to accept the stock, he became liable for the full price of the stock as mentioned in the negotiations between the parties, cannot, probably, be maintained, even if a valid contract were shown. The title to the stock never passed, and hence it is probable that all the plaintiff could recover would, in such case, be the damage sustained by him in consequence of the defendant's failure to comply with the contract.

It seems to be the rule that where a party agrees to make a purchase of property, and then refuses to proceed in the purchase and take the property, the loss of the bargain constitutes the proper rule of damages, because the property

never passed. See *The P., C. & St. L. R. W. Co.* v. *Heck*, 50 Ind. 303, and *Porter* v. *Travis*, 40 Ind. 556, and cases cited.

The judgment is affirmed, with costs.·

Petition for a rehearing overruled.