CHARLES J. GOETHALS, JR. *v.* MARCEL J. DE VOS, SR., IRMA B. DE VOS AND MARCEL J. DE VOS, JR., d/b/a DE VOS FUNERAL HOME

[No. 3-575A96. Filed August 29, 1977. Rehearing denied November 8, 1977.]

144

*Robert L. Stephen,* of South Bend, for appellant.

*Albert L. Doyle,* of Mishawaka, for appellees.

HOFFMAN, J.—This action was brought by plaintiff-appellant Charles J. Goethals, Jr. (Goethals) for specific performance or, in the alternative, money damages, on an alleged contract between himself and defendants-appellees Marcel J. DeVos, Sr., Irma B. DeVos and Marcel J. DeVos, Jr., d/b/a DeVos Funeral Home (DeVos). The complaint alleges in substance that on April 1, 1974, counsel for DeVos sent a letter to counsel for Goethals offering to sell the general stock-in-trade and real estate of the DeVos Funeral Chapel and that on May 9, 1974, Goethals, through his attorney, sent a written reply accepting all of the terms and conditions of the alleged offer thereby consummating an enforceable contract of sale upon which a prayer for relief should be granted. In response DeVos denying the purported offer moved for summary judgment on grounds that the letter in question was not intended as an offer and was merely an attempt to negotiate. Upon affidavits submitted by the parties the trial court found no material issues of fact and that as a matter of law no contract ever came into existence between the parties. Goethals thereafter perfected this appeal contending that the trial court erred in granting the motion because the correspondence discloses evidence of an offer and an acceptance such as would preclude summary judgment.

Drawn into question therefore is whether the purported offer has all those accouterments which upon acceptance would create a contract. Corbin states that "[w]ith respect to the resulting legal relations * * * [a]n *offer* is an act on the part of one person whereby he gives to another the legal power of creating the obligation * * *" while "[a]n *acceptance* is

the exercise of the power conferred by the offer." 1 Corbin, Contracts, n. 18, at 24 (1963). In this context if the expression of two parties purporting to be acts of offer and acceptance are materially different in meaning, or if their expressions fail to show agreement on essential terms, and the facts are not such as to create an estoppel against either of the parties there is no mutual assent and hence no contract. *Robison v. Fickle* (1976), 167 Ind. App. 651, 340 N.E.2d 824 (transfer dismissed); *Standard Land Corp. v. Bogardus et al.* (1972), 154 Ind. App. 283, 289 N.E.2d 803 (transfer denied).

The purported offer in the case at bar is represented by the following letter dated April 1, 1974, which states in pertinent part:

"Re: Communication of partial terms of sale of funeral chapel and other realty, together with certain personal property including intangibles

"Dear Clarence:

"As you know, I am representing Marcel J. DeVos, Sr., Irma B. DeVos, and Marcel J. DeVos, Jr. in the proposed sale by my clients to Mr. Joseph Goethals, your client, of realty and certain other interests located at the following addresses, viz: 701 S. West St., 509 W. 8th St. and, 701 Kamm Ct., all in Mishawaka, Indiana.

"Confirming my remarks over the phone of a few days ago, my clients would be willing to sell to Mr. Goethals the realty located at the three aforementioned addresses, the stock-in-trade of the DeVos Funeral Chapel, the good will of that business, fixtures, motor vehicles of the business, furnishings of the business and good will, pursuant to a mutually satisfactory land contract agreement, for the sum of $150,000 at 8½ per cent interest, computed semi-annually and payable over 15 years with $43,000 down.

"Among items not to be confused with or enumerated among the aforementioned listing would be a late model Pontiac 4-door sedan, which is green in color, certain paintings or prints numbering three or four which hang in the funeral chapel portion at the 701 S. West address, together with a certain Hammond spinet organ. I would not be surprised should these exceptions come to include certain other small items of sentimental value, which will come to mind of the sellers as this proposed transaction matures over the next several days.

"The completed agreement will have to include the usual kind of things calculated to protect the seller of a going business in the land contract context, which shall include, though not be limited to the following viz: Provision for maintenance, retention or replacement of the physical improvements, personalty and good will, matters relating to approval.

Partial sale terms, DeVos Funeral Chapel — p. 2

by the State Board of Embalmers and Funeral Directors of the proposed transaction, inspections, covenants respecting protection of the reputation of the premises and the good will, assignability, limitations of use, observance by the purchaser of deed restrictions, conditions and covenants, and matters of zoning.

"The usual boiler plate provisions relating to payment schedules, taxes, assessments, insurance, title work, conveyancing and other like matters would also, of course, need to be worked out on a mutually acceptable basis.

"After you have had opportunity to consult with Mr. Goethals, I trust you will advise as to the result and as to your recommendation as to a next step in this matter. Until that time, I remain — "

Consideration should be given to whether this communication of April 1, 1974, was an act that would lead the offeree reasonably to believe that a power to create a contract was conferred upon him. Williston notes that the intention of the parties is of critical importance in this regard. Thus, even though a showing of intent is ordinarily not necessary to the existence of a written contract it having been merged into the writing, a contrary statement expressing the intention not to be bound until some subsequent event, would be relevant to determining the inception of a contract as distinct from further negotiation. *State ex rel. Appleman v. Lake Circuit Court* (1952), 231 Ind. 378, 108 N.E.2d 898; 1 Williston on Contracts, 3d Ed., § 28, at 69 (1957). *See also, Avery v. Citizens Loan & Trust Co. Admr.* (1932), 94 Ind. App. 161, 180 N.E. 23.

The letter of April 1, 1974, reveals an intent not to be bound wherein it states "my clients would be willing to sell * * * pursuant to a mutually satisfactory land contract agreement, * * * I

would not be surprised should these exceptions come to include certain other small items of sentimental value, which will come to mind of the sellers as this proposed transaction matures * * * you will advise me as to the result and as to your recommendation as to the next step in this matter."

Furthermore, the affidavits before the trial court disclose bargaining transactions in the nature of preliminary negotiations. Marcel J. DeVos, Sr. and Marcel J. DeVos, Jr. had been in communication with appellant during mid-March, 1974, concerning the sale of the DeVos Funeral Chapel. The terms of that discussion were then generally discussed with counsel. Toward the end of March counsel for the parties discussed other matters but left open many of the details concerning the actual sale of land. Out of these conversations came the proposed partial terms in the letter of April 1, 1974. Thereafter further discussion acknowledged by both parties occurred concerning the exclusion of certain real and personal property.

Clearly some proposals were made upon which agreement was intended while other considerations were left open for further bargaining. A meeting of the minds at this stage was impossible. Moreover, it would be inappropriate to construe the conduct or letters of a party as proposals when they were intended only as preliminary negotiations. Under such circumstances when a communication clearly discloses that it is intended merely to start negotiations or it is intended to call forth an offer from the one to whom it is addressed, and many of its terms are unsettled, it cannot be accepted so as to constitute an agreement. *Helvey et ux. v. O'Neill* (1972), 153 Ind. App. 635, 288 N.E.2d 553. *See also, Dolman v. Studebaker* (1875), 52 Ind. 286; *Travelers Ins. Co. v. Employers Lia. Corp.* (1933), 97 Ind. App. 365, 186 N.E. 912.

In the case at bar, the April 1, 1974, letter was specifically open on several important terms and intentionally not framed as an offer. Accordingly, since Goethals never received an offer capable of acceptance, a legally binding contract was not consummated.

Appellant would have this court view the threshold question of whether a contract came into existence as a material issue of fact upon which the trial court erroneously entered summary judgment. However, a fact is "material" for purposes of summary judgment only if it tends to facilitate resolution of any of the factual issues either for or against the party having the burden of proof on those issues. *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756. Conversely, granting a motion for summary judgment does not involve a question of proof and of which party has the burden thereof but rather after accepting allegations as true, it is intended to decide legal questions and which party as a matter of law is entitled to prevail as against the other. *Apple; Oakes v. Apple et al.* (1971), 149 Ind. App. 529, 274 N.E.2d 402 (transfer denied).

In *Risk v. Thompson* (1957), 143 N.E.2d 116, this court treated as a material issue of fact the question of whether the informal paper upon which the appellee sued was a completed contract or whether it failed to express a meeting of the minds leaving open certain terms for future discussion. Thus the court affirmed the order for specific performance on the theory that once the trial court had found the existence of a contract the court on appeal was bound thereby if there were a showing of any evidence in support of its conclusion.

Our Supreme Court on transfer reversed implicitly taking exception to this theory by stating:

> "A court may not make a contract for the parties. It may not substitute its own ideas for any of the terms or conditions of a contract.
>
> "The evidence is undisputed that the minds of the parties failed to meet on all details of any complete contract. It lacks certainty necessary for a complete meeting of the minds of the parties. The attorneys for each considered the memorandum when first drawn only as a start or beginning for a contract — not one that was completed." *Risk v. Thompson* (1958), 237 Ind. 642, at 652-53, 147 N.E.2d 540, at 545-46.

Accordingly the contract's existence was decided as an issue of law about which there was no dispute as to evidence but only as

to whether the legal requirements of formation were fulfilled.

In the case at bar no evidence has been shown to be in conflict concerning the actions of the parties. Only the ultimate fact concerning the intent of the April 1, 1974, letter is in dispute. The question of whether the relationship of the parties took on the legal significance of a contract under these circumstances is not a question for a trier of fact. Rather when no facts have been shown to be in issue the inception of agreement is determined by the court as a matter of law. *See generally, Robison v. Fickle* (1976), 167 Ind. App. 651, 340 N.E.2d 824, *supra*.

Having found no reversible error the judgment of the trial court must be affirmed.

Judgment affirmed.

Staton, P.J. and Garrard, J. concur.

NOTE—Reported at 366 N.E.2d 673.