## In the Matter of the GUARDIANSHIP OF Martha WALTERS, Incompetent

### John WALTERS, Appellant (Petitioner below),

v.

### Armand MURAT, Successor Guardian of the Estate, Appellee (Respondent below).

No. 3–1282A354.

Court of Appeals of Indiana, Third District.

March 22, 1984.

Rehearing Denied May 3, 1984.

David V. Bent, John H. Gautier, Bingham, Loughlin, Means & Mick, Mishawaka, for appellant.

Thomas H. Singer, Lysohir & Singer, South Bend, for appellee.

STATON, Presiding Judge.

Dorothy Murat, daughter and temporary guardian of Martha Walters closed out a savings account which had been held by Martha and her husband, John Walters, as joint tenants with a right of survivorship. After an evidentiary hearing, the trial court determined that while Dorothy should remain guardian of Martha's estate John should be the guardian of Martha's person. In addition, the trial court ruled that either Dorothy or John could make withdrawals from the savings account if they first acquired a court order. When Martha died, the trial court found that Martha's estate and John should share equally the balance of the savings account. On appeal, John contends that his right of survivorship in the joint savings account entitled him to the entire balance of the account.

Reversed.

Martha and John signed an antenuptial agreement when they were married; both had children from a previous marriage. After eight years of marriage, Martha and John opened a joint savings account with a right of survivorship. Martha had contributed most of the money on deposit.

While Martha and John were visiting relatives in Ohio, Martha suffered an injury which rendered her comatose. Without

John's knowledge, Martha's daughter from her previous marriage (Dorothy) obtained a temporary guardianship of Martha. As guardian, Dorothy closed the Walters's joint savings account and opened another savings account for Martha's care. Even though John obtained the permanent guardianship of Martha's person, the trial court allowed Dorothy to retain the guardianship of Martha's estate. The trial court also ordered the reestablishment of the Walters's joint bank account with the same rights in Martha and in John as they had created in their original joint account. Withdrawals from the new account were permitted by either Dorothy or John only with a court order. When Martha died, the trial court divided equally between John and Martha's estate the balance of the joint savings account.

John contends that he is entitled to the entire balance of the joint account because he survived Martha. He asserts that the unambiguous contractual language of the signature card together with case law and statutory law support his claim to the entire balance. We agree.

In non-probate transfer cases we look to case law, statutory law, and the third-party beneficiary contract principles which govern the interpretation of the signature card. *Moore v. Bowyer* (1979), 180 Ind. App. 429, 388 N.E.2d 611; *Robison v. Fickle* (1976), 167 Ind.App. 651, 340 N.E.2d 824. IC 1978, 32–4–1.5–5 (Burns Code Ed.); *In re Estate of Fanning* (1975), 263 Ind. 414, 333 N.E.2d 80. Because the trial court ordered re-establishment of the same rights as contracted for in the Walters's original savings account, the terms contained on the original signature card determine the parties intent of ownership in the account. This signature card reads in pertinent part:

> "Walters, Martha Dockery and Walters, John as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for a savings account in

TOWER FEDERAL SAVINGS AND LOAN ASSOCIATION

and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint tenants' signatures, shown below in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one or the survivor or survivors at any time. This account may be pledged in whole or in part as security for any loan made by you to one or more of the undersigned. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationship reflected in or established by this contract. It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties *are and shall be conclusively intended to be a gift and delivery* at that time of such funds to other signatory party or parties to the extent of his or their pro rata interest in the account. You are authorized to accept checks and other instruments for credit to this account, whether payable to one or more of the parties, and to supply any needed endorsement. You are relieved of any liability in connection with collection of all items handled by you without negligence, and shall not be liable for acts of your agents, subagents or others or for any casualty. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to this account, including expense incurred, and any other outside expense incurred relative to this account may be charged to it." (Original emphasis.).

This contract gave Martha and John during their lifetime the right to the amount of the funds in the account which they individually deposited. In addition, each was entitled to their pro rata share of any subsequent deposits. The contract language "right to survivorship" is the only phrase describing

the disposition of the account upon the death of either Martha or John.

Indiana law is clear that the words "joint tenants with a right of survivorship" with additional words expressly excluding another type of relationship within a contractual signature card mean that upon the death of one joint tenant, the survivor(s) owns the balance of the account. *Robison, supra* 167 Ind.App. at 660, 340 N.E.2d at 830. The contractual terms agreed to in the Walters's signature card unambiguously created a joint account with the right of survivorship. Without any showing of a contrary intent by either Martha or John the Walters's signature card evidenced that upon the death of one, the survivor would acquire the deceased tenant's share in the joint account. Therefore, as Martha's survivor John is entitled to the entire balance of the joint savings account.

Statutory law compels our determination that John is entitled to the balance of the joint savings account. Section 4 of the Indiana Non-Probate Transfers Act provides that the balance of a joint account at the death of one of the parties belongs to the survivor(s) unless there is clear and convincing evidence of a different intention.[1] Section 5 provides that the "right of survivorship" is determined by the form of the account at the death of one of the joint tenants.[2] This section allows alteration of the account only by a written order signed by a party during his lifetime.

The description of the joint savings account contained in the Walters's signature card provided that Martha and John held the account jointly with a right of survivorship. As we have stated, the guardian of the estate has failed to establish that other evidence showed a different result. Therefore, no alteration occurred divesting John of his entitlement to the balance of the savings account as provided in section 4.

The trial court's order to divide the savings account equally between John and Martha's estate probably was based upon the language which describes a joint tenan-

cy as owned by the half and by the whole. However, the court in *Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92, 96 stated that if joint tenants owning by the half and by the whole do not dispose of their individual interests during their lives the entire amount in the account passes to the survivor. The Court quoted the Commission of the Indiana Probate Code Study to support this decision:

> "The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy."

*Id.* We agree with the rationale in *Rogers, supra* that there exists an underlying assumption that most persons who use joint accounts want the survivor to take the balance. *Id.* at 96–7. This logic is particularly persuasive when the signature card provides for this result. Therefore, the trial court was incorrect to divide the balance of the Walters's joint savings account because of the definition of joint tenancy. However, if the division was made pursuant to an interpretation of the Walters's signature card, we believe that our interpretation and not the trial court's is the correct one.

The guardian of Martha's estate contends that the equal distribution was correct because the restricted access to the joint savings account during Martha's life somehow changed the terms of the agreement signed by Martha and John when they first opened the account. The guardian also asserts that because the guardian of the estate had proper access to the account, Martha's estate was entitled to one-

---

1. IC 1980, 32–4–1.5–4 (Burns Code Ed.).

2. IC 1980, 32–4–1.5–5 (Burns Code Ed.).

half of the balance upon Martha's death. We disagree with both assertions.

The restriction on the joint account during Martha's guardianship did not alter the terms of the signature card which was signed by Martha and John when they first opened the joint account. The trial court order which re-established the joint account expressly provided that all rights originally established by Martha and John under the original account apply to the new one. The decision of *Kuehl v. Terre Haute First National Bank* (1982), Ind.App., 436 N.E.2d 1160 does not support the equal distribution of the Walters's account upon Martha's death. The *Kuehl* decision was limited to the propriety of a guardian to withdraw the entire balance from a joint bank account for the care of a joint tenant. It did not decide the question presented to us in this case. Therefore, it is inapplicable.

Reversed.

GARRARD and HOFFMAN, JJ., concur.